[Civ. No. 6186.   Third Appellate District.—May 4, 1939.]

MANUEL GARCIA THOME, Petitioner, v. THE SUPERIOR COURT OF MERCED COUNTY et al., Respondents.

J. L. Royle for Petitioner.

Earl Warren, Attorney-General, Eugene M. Elson, Deputy Attorney-General, Allen A. Henderson, District Attorney, and F. A. Silveira, Special Deputy District Attorney, for Respondents.

Ben Harrison, United States Attorney, Francis C. Whelan, Assistant United States Attorney, Leslie A. Cleary, District

Attorney (Stanislaus County), Frank Collier, Deputy District Attorney, and Roger R. Walch, District Attorney (Kings County), as *Amici Curiae,* on Behalf of Respondents.

THE COURT.—A rehearing was granted in this case in order that we might have the benefit of further argument. Additional briefs have been filed and the matter orally argued, and after further consideration we adopt the opinion heretofore filed, as follows:

"By this writ petitioner seeks to review an order of the Superior Court of the County of Merced finding petitioner guilty of contempt.

"This is another case growing out of the preliminary injunction issued by the superior court restraining and enjoining certain defendants, including petitioner, from interfering with the agents of the state department of agriculture in testing cattle under the provisions of the Bovine Tuberculosis Act. (Secs. 221–254.)

"After the issuance of the preliminary injunction an order was directed to petitioner to show cause why he should not be punished for contempt of said preliminary injunction. A hearing was had and petitioner adjudged in contempt of court, and ordered punished therefor.

"There seems to be no conflict in the testimony. Upon a certain day petitioner was notified to have his cattle in stanchions, preparatory to receiving the tuberculin test. Upon that day a duly authorized veterinarian of the agricultural department appeared at the dairy of petitioner, and found the cattle were all confined in their stanchions. Petitioner was present in person and with a duly licensed veterinarian. Petitioner then requested of the state veterinarian a sample or smear of the tuberculin about to be injected into his cattle. This request was refused, and the petitioner then would not permit the test to proceed, and the citation and conviction of contempt followed.

"This court recently upheld the constitutionality of that portion of the Agricultural Code relating to bovine tuberculosis (A*ffonso Bros.* v. *Brock,* 29 Cal. App. (2d) 26 [84 Pac. (2d) 515]) upon the ground it was a valid exercise of the police power enacted in the interest of the public health. We there pointed out, however, that although stringent and summary, the act did not deprive the owner of his remedy

for wilful and unlawful destruction of his cattle, if in fact they were not afflicted with tuberculosis, and that he had a remedy for the wilful or wrongful destruction in a subsequent action for damages against those who were responsible for such killing. The destruction of healthy animals was not authorized by the statute, and while an owner of cattle may not obstruct an official inspection of his animals nor interfere with the department nor its agents while carrying out the provisions of the act, there is nothing to prevent him from being present with his own veterinarian to observe and participate in the examination.

"A misunderstanding seems to have arisen as to the meaning of the word 'participate'. By the use of that word it was intended, and its meaning justifies the interpretation, that an owner might at that time, do any and all things, either by himself or through his veterinarian that would not in any manner or way interfere with the performance of the duties of the state veterinarian.

"Accordingly we believe an owner in the protection of his subsequent right to challenge the acts of the state, was entitled to and was justified in requesting a smear of the tuberculin about to be injected into his cattle. One of the prerequisites of the administration of this test is the use of approved virus. The only practical way that such a fact can be determined is to obtain, prior to its use, a sample thereof. Where, as in the case at issue, this right was refused the owner, he was justified in refusing to permit the department to further proceed with its test.

"The law accords the owner every right and opportunity to show that the law had been carelessly or improperly administered or that his cattle were not reactors, and to deprive him of the means of so showing, would be to deprive him of a constitutional right. It would be an idle act to declare that the owner could, upon an appropriate showing, recover for abuse upon the part of the state and at the same time deny him the opportunity of obtaining the evidence necessary to make such showing.

"As regards the uncertainty of the terms of the preliminary injunction, we have, in *Mattos* v. *Superior Court,* 30 Cal. App. (2d) 641 [86 Pac. (2d) 1056], considered that point. We need not here repeat what was there said.

■ "Petitioner also objected to the use of the tuberculin by the veterinarian because it did not have affixed to the container a printed label stating certain facts required by section 1065 of the Agricultural Code. We do not believe that tuberculin is a substance as that term is used in the definition of economic poison.

" ' ' "Economic poisons" includes any substance, or mixture of substances intended to be used for preventing, destroying, repelling, or mitigating any and all insects, fungi, bacteria, weeds, rodents, predatory animals or any other form of plant or animal life which is, or which the director may declare to be, a pest, which may infest or be detrimental to vegetation, man, animals or households, or be present in any environment whatsoever.' (Sec. 1061a, Agricultural Code.)

"Tuberculin is defined as the 'produce of the growth of the tubercle bacillus from any source, used or intended to be used in diagnosing tuberculosis in cattle'." (Sec. 221a, Agricultural Code.)

"The order is annulled and the petitioner discharged."

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 30, 1939.