[Civ. No. 8875.   Third Dist.   May 31, 1956.]

ROBERT J. BAILEY et al., Petitioners, v. SUPERIOR COURT OF SHASTA COUNTY, Respondent; JOSEPH S. BALL et al., Real Parties in Interest.

48

Chenoweth & Leininger for Petitioners.

No appearance for Respondent.

R. P. Stimmel and Frank W. Shuman for Real Parties in Interest.

VAN DYKE, P. J.—This is a proceeding in certiorari to review an order made in a contempt proceeding arising out of violations of an injunctive decree theretofore made in a civil action. The civil action was brought in respondent court by Joseph S. and Avesta Ball, husband and wife, as plaintiffs, against Robert J. and Alberta Bailey, husband and wife, as

defendants. Plaintiffs in the civil action are the real parties in interest here, and for convenience will be referred to as "real parties." We shall call the Baileys "petitioners." By the complaint in the civil action it was alleged and the answer admitted that petitioners were owners of certain real property, and that real parties were the owners of real property adjoining; that petitioners had formerly owned the whole and had granted to the real parties the portion now owned by the latter. It was further alleged that when real parties purchased from petitioners and took possession there existed and for long had existed a large ditch which conveyed water across the remaining land of petitioners and to the land deeded to real parties where the water was used for the benefit of real parties' land; that the deed contained no express grant of easement; that the property of real parties was located in the Anderson-Cottonwood Irrigation District and that they had no other means of securing water therefor except from the canal of the irrigation district and by the use of the ditch. By a second count, it was alleged that real parties were then in the process of purchasing an additional parcel of land from petitioners, which parcel likewise had been and was being served with needed water through the same ditch; that, although demand had been made upon petitioners that the deed conveying said latter parcel should contain an express provision for an easement for the continued transportation of water across the remaining land of petitioners, the petitioners had refused, claiming no such easement right existed. The cause proceeded to trial, and the court made findings of fact upholding the contentions of real parties. The court specifically found that by means of said ditch the property of real parties had received in times past an "accustomed flow of water sufficient for the irrigation of said parcels according to the use and practice of the Anderson-Cottonwood Irrigation District"; and that real parties had a right to receive such accustomed flow of water through the ditch for use on their property; that the right was an easement appurtenant to their two parcels of land even though the easement was not specifically described in either the deed to the first parcel, or in the contract of sale for the second parcel; "that the plaintiffs [real parties] have the right to the accustomed flow and allotment of water from the supply of the Anderson-Cottonwood Irrigation District to and upon said Parcels B and C at the point where said ditch crosses the north line of said Parcel C." (Parcel C,

as thus referred to, was the land owned by real parties.) It was further found that real parties were entitled to have said accustomed flow and allotment of water to their premises "at the said point where said ditch crosses the North line of said Parcel 'C,' and that the Defendants [petitioners] . . . should be restrained from interfering with the accustomed flow and allotment of water"; that the ditch referred to was and had been obviously, permanently and openly used for the benefit of the property of real parties. Attached to the findings was a plat showing the three parcels referred to and showing the existing ditch, its course through petitioners' land, and its point of entry upon the land of real parties. A judgment was entered, pertinent portions of which follow: It was adjudged that real parties had "the right in perpetuity to receive, at the point where the existing ditch shown on Exhibit A crosses the north line of Parcel C, the accustomed flow of water in said ditch at said point, sufficient for the irrigation of Parcels B and C according to the use and practice of the Anderson-Cottonwood Irrigation District." It was further decreed that petitioners and their successors in interest of any part of their retained property were "restrained in perpetuity from acts in derogation of aforesaid right."

No appeal was taken from the aforementioned judgment, it became final, and thereafter a proceeding in contempt was initiated by real parties through filing in the action in which the judgment had been rendered an affidavit in support of a request for citation for contempt. The affidavit made apt references to the judgment in the civil action and particularly to that portion thereof which enjoined petitioners from committing any acts in derogation of the rights declared by the judgment and then asserted that, in derogation of those rights, petitioners had destroyed the existing ditch across their land; had constructed a new ditch along their boundaries to a point where the old ditch had entered upon the land of real parties; that the new ditch was inadequate; that the result had been real parties were not receiving and could not receive the accustomed flow of water delivered by the old ditch. The affidavit contained a prayer that petitioners be punished for disobeying the injunction. A contempt citation was issued and petitioners filed a verified answer. Therein they admitted that they had destroyed the old ditch, because, as they said, they had sold the land over which the ditch extended, and the land so sold was being used for residential

subdivision purposes. They averred that in selling the land, they had reserved a right of way 10 feet wide for a ditch to serve real parties which took a different route from the old ditch and went along the westerly and southerly boundary of the property of petitioners to the point where the old ditch had entered the land of real parties. They alleged that they had made this ditch entirely adequate in size and grade to furnish more than the amount of water which real parties had received from the old ditch, and that under the judgment they had a right to change the ditch and to substitute a new ditch provided the new ditch properly transported water sufficient in quantity for the irrigation of the land of real parties.

Hearings were held in the respondent court, and an order was entered adjudging the petitioners guilty of contempt, in that they had "wrongfully and unlawfully, in derogation of the judgment and decree heretofore rendered, violated the terms thereof in that the plaintiffs [real parties] did not receive, at the point where the existing ditch shown on Exhibit 'A' of the judgment and decree made and entered herein on July 14, 1953, crosses the north line of Parcel C, the accustomed flow of water at said point sufficient for the irrigation of Parcels B and C, as provided in said decree." Having adjudged petitioners guilty of contempt, the court did not stop, but went on to other matters. The court declared: That real parties were entitled to the accustomed flow in the ditch at the point of its entry to their lands in sufficient quantities so that they and their successors in interest might irrigate their property "east of the swale located on their property" in accordance with irrigation practices "in 7 hours"; that petitioners had sold and conveyed a portion of their property across which the original ditch had existed and were contemplating selling the rest, and that if this were done, real parties would have no adequate method of enforcing the judgment and decree; that the accustomed flow of water called for in the original decree was a quantity sufficient to irrigate real parties' land east of the swale under normal former methods of irrigation in seven hours; that by reason of the acts of petitioners 27 additional hours were required to irrigate said property at a cost to real parties of $1.50 per hour or the total sum of $40.50; that a flow of $3\frac{3}{4}$ cubic feet per second was the quantity of water sufficient to irrigate real parties' land east of the swale in seven hours. It was ordered that petitioners may purge themselves of

contempt by (a) paying the cost of whatever had been done on the new ditch and by paying the plaintiffs $40.50 damages; that the accustomed flow of water as those words were used in the original judgment be defined as not less than 3¾ cubic feet of water per second; "that *the duty to deliver water* as set forth in the original decree be charged as a continuing duty against Defendants [petitioners], and their successors in interest"; that "so long as Plaintiffs [real parties] and their successors in interest shall require said water to irrigate for agricultural or horticultural use, the *duty* of the *Defendants* [petitioners] to *supply* water as set forth in the original Judgment and Decree, and fixed herein as not less than 3¾ cubic feet per second, be charged as a burden running with the land of the Defendants, described in Exhibit 'Z' hereunto annexed and made a part of this Order and Judgment." (Emphasis ours.) (Apparently, Exhibit Z thus referred to is the same map attached to the judgment in the civil action and to the findings therein.) It was declared that petitioners had constructed a new ditch in place of the old ditch through which the land of real parties had theretofore obtained water from the Anderson-Cottonwood Irrigation District; that the new ditch extended along the westerly and southerly sides of petitioners' land to the east boundary thereof and thence along a 10-foot strip approximately 330 feet to the point where the new ditch entered the land of real parties which point was the same point where the old ditch had entered. It was recited that petitioners had stipulated that real parties might go upon petitioners' land and along the new ditch for the purpose of turning water into the ditch from the lateral of the irrigation district. It was further adjudged that real parties had the obligation of turning the water required for their irrigation purposes from said lateral canal into said ditch or such other conduit as petitioners might thereafter install for the delivery of the water allotted to real parties; and that petitioners "and their successors in interest in and to the above described land *shall have the obligation of cleaning, maintaining and keeping said ditch, or other conduit, in repair at their own cost and expense.*" (Emphasis ours.) It was further decreed that if at any time in the future real parties, or their successors in interest, should no longer require water to irrigate their said lands for agricultural or horticultural use, they or their successors in interest should execute and acknowledge a termination or other document in writing eliminating said

burden running with the land of petitioners as prescribed in the decree.

It is at once perceived that a proceeding which started out as a contempt proceeding based upon an alleged violation of an injunctive decree in the original action finally resulted in many other things additional to a finding of contempt. Contending that the respondent court had acted in excess of jurisdiction in doing more than acting upon the issue of contempt, the Baileys petitioned this court for a writ of certiorari to review the respondent court's contempt proceedings. Responsive to their petition, this court ordered out its writ.

It is settled that certiorari lies to review and annul a contempt order rendered without or in excess of jurisdiction; that a contempt proceeding is not a civil action but is of a criminal nature even though its purpose is to impose punishment for violation of an order made in a civil action; that no presumptions of validity may be indulged in support of judgments in contempt as would be the case with respect to ordinary judgments; that an examination will be made of the whole record before the trial court to determine whether there was any substantial evidence before it to sustain its exercise of jurisdiction; that in a proceeding for constructive contempt the affidavit on which the proceeding is based constitutes the complaint, the affidavit of defendant constitutes the answer or plea, and the issues of fact are thus framed by the respective affidavits serving as pleadings. (*Freeman* v. *Superior Court*, 44 Cal.2d 533, 536-537 [282 P.2d 857].) As said in *Hotaling* v. *Superior Court*, 191 Cal. 501, 504 [217 P. 73, 29 A.L.R. 127], contempt of court is a specific criminal offense. A contempt proceeding is not a civil action, either at law or in equity, but is a separate proceeding of a criminal nature and summary character in which the court exercises but a limited jurisdiction, *and in which the People of the State prosecute the action.* In *H. J. Heinz Co.* v. *Superior Court*, 42 Cal.2d 164 [266 P.2d 5], where, in a contempt proceeding arising out of a judgment theretofore rendered in a civil action, the respondent court had not only found that contempt had been committed but had proceeded also to award compensatory damages to the person in whose favor the violated decree had run, and to direct the contemnor to do certain affirmative acts preventive of further violations, the Supreme Court said, at pages 173-175:

"On the question of the propriety of awarding compensatory damages, that is, damages suffered by plaintiff by reason of defendant's violation of the injunction, petitioner contends that the court had no authority in a contempt action to award such damages. This contention must be sustained. In this state 'the power of the Courts to punish for contempt has been regulated by statute . . .' since 1851. . . . Section 1218 of the Code of Civil Procedure provides that '. . . a fine may be imposed on him [one guilty of contempt] not exceeding five hundred dollars, or he may be imprisoned not exceeding five days, or both. . . .' Section 1219 authorizes imprisonment as a coercive measure where the contempt consists of a refusal to perform an ordered act. These provisions have been the law since their enactment in 1851 and have been recognized by the courts as establishing the limits within which a court may punish for contempt. . . .

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The injured person's property rights may be adequately protected through recourse to the remedies provided by other statutory law. . . . In 39 California Law Review, at page 560, the author states that 'California has no provision for compensatory contempt proceedings. Civil damages may be collected in an ordinary civil action for an act otherwise a contempt.' The enforcement of an order of contempt in this state is not for the vindication of a private right but is for the maintenance of the dignity and authority of the court, and to preserve the peace and dignity of the people of the State of California. . . . Insofar as the contempt is against the authority of the court, section 1218 of the Code of Civil Procedure is adequate to compel the enforcement of its order since each day's violation is a separate offense.

"To allow compensatory damages in the contempt proceeding would have the effect of turning it into an action for damages. In an action for damages, the parties are ordinarily entitled to a trial by jury and an appeal, neither of which has been accorded the petitioner in this proceeding."

From what has been said it appears that in the contempt proceeding, the respondent court had limited issues upon which it had power to act. The initial sworn pleading or affidavit in support of the citation for contempt charged merely that certain rights had been accorded to them under the decree in the civil action; that the defendants in that action had been enjoined to do nothing in derogation of those rights; and that they had, in violation of the decree, destroyed

the ditch through which real parties had the right to receive water for their land; and had attempted to substitute therefor another and inadequate ditch. The verified answering pleading of the petitioners admitted the destruction of the original ditch. Under claim of right to do so, they asserted that they had constructed an adequate substitute ditch and pleaded further that the judgment in the original action was so uncertain and ambiguous that contempt proceedings could not be based upon it. As we shall point out, neither of these two defensive contentions was sound. The judgment was not uncertain as against the charge petitioners had wrongfully destroyed the ditch; and the judgment, properly construed, gave petitioners no right, without consent or acquiescence of real parties, to substitute a new ditch or conduit for the old ditch. The trial court found, and properly found, that the acts of petitioners constituted a violation of the injunctive order of the court in the civil action, and that therefore petitioners were in contempt. In that situation nothing remained for respondent court save only to declare the punishment to be inflicted upon the petitioners because of their contempt, and, if it deemed it proper to do so, to make such orders preventive of further contempt as seemed called for. (*H. J. Heinz Co.* v. *Superior Court, supra.* In the cited case a divided court held that the court might in the contempt proceeding order the contemnor to destroy certain apparatus used in violating the decree.) It is to be noted that, having found petitioners to have been in contempt, the respondent court pronounced no judgment as punishment therefor. It could fine, it could imprison, or it could do both, and had its finding of contempt been followed by pronouncement of judgment therefor within the limits of section 1218 of the Code of Civil Procedure, it would thereby have exhausted its jurisdiction, except perhaps for preventive action as in the Heinz case.

Respondent court took, and this court may here take, judicial notice of the record in the civil action. (*Ex parte Ah Men,* 77 Cal. 198, 200 [19 P. 380, 11 Am.St.Rep. 263].) In the cited case, in a contempt proceeding wherein the affidavit in support of the contempt citation had not set forth the terms of the injunction alleged to have been violated, the court said:

". . . In this state, although contempt of court is a specific criminal offense, and a judgment of conviction thereof the same as a judgment in a criminal case . . ., the practice has

always been to prosecute a matter of contempt in the cause or proceeding out of which it arose, and not as a separate proceeding, with a title of its own. It is, therefore, unnecessary in the affidavit to set forth the pendency of the cause or proceeding, or the provisions of the order which has been violated. The court takes judicial notice of those matters.'' (See also *Mattos* v. *Superior Court,* 30 Cal.App.2d 641, 647 [86 P.2d 1056].)

Turning now to the judgment roll in the civil action within the embrace and under the title of which this contempt proceeding was prosecuted, we are advised of the following: Therein the plaintiffs counted for their causes of action upon the provisions of section 1104 of the Civil Code, reading as follows:

''A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.''

McKinney's Digest, volume 9, under the heading ''Easements,'' section 16, cites many cases holding that where an owner of land divides it into two parcels and sells, there is an implied grant of all obviously used easements. ▆ Such easements carry secondary easements such as the right to repair, etc., but there is no implied duty of the owner of the servient tenement to maintain and repair the right of way. (See also 9 McKinney's Digest, ''Easements,'' §§ 36, 37.) It is obvious from those portions of the complaint, the findings and the judgment in the civil action which we have set out, that the object of the plaintiffs was to have a declaration of implied easement. The judgment rendered in the civil action declared that, by virtue of their ownership of the lands conveyed and agreed to be conveyed to them by petitioners, real parties and their successors in interest were entitled to the right in perpetuity to receive at the point where the existing ditch crossed their north line the accustomed flow of water in said ditch sufficient for the irrigation of their land. Along with this went, of course, the usual secondary easement for maintenance and repairs of that ditch. But this was a fixed and certain servitude upon petitioners' land in favor of real parties' land and its implied creation cast no personal duty on petitioners save a negative duty to

respect it. Without the consent of all owners interested the existing ditch could not be moved nor the burden of its use increased.

If construction be needed as to the meaning and effect of this decree permissible reference to the pleadings and to the findings suffices to make the judgment clear, insofar as the nature of the easement be concerned. ▇ In construing a judgment resort may be had to the pleadings and findings of fact.

". . . 'If the entry of a judgment is so obscure as not to express the final determination with sufficient accuracy, reference may be had to the pleadings and to the entire record. If, with the light thrown upon it by them, its obscurity is dispelled, and its intended significance made apparent, it will be upheld and carried into effect. In cases of doubt regarding the signification of a judgment, or any part thereof, the whole record may be examined for the purpose of removing the doubt. One part of the judgment may be modified or explained by another part; and uncertainties in the judgment may become certain under the light case upon them by the pleadings or other parts of the records.' " (*Brown* v. *Superior Court*, 110 Cal.App. 464, 466-467 [294 P. 428]. See also *Verdier* v. *Verdier*, 121 Cal.App.2d 190, 192 [263 P.2d 57].)

In *Ex parte Ambrose*, 72 Cal. 398 [14 P. 33], the Supreme Court said:

". . . [T]he same rules of interpretation apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing, . . ." (See also *Rinaldo* v. *Board of Medical Examiners*, 123 Cal.App. 712, 715 [12 P.2d 32].)

Said the District Court of Appeal in the case of *In re Carr*, 65 Cal.App.2d 681, 684 [151 P.2d 164]:

". . . When the question of the meaning and effect of a judgment or order is raised, the entire document is to be construed as a whole to determine the purpose and intent, just as in a case of a contract or other document."

In *Kirkpatrick* v. *Harvey*, 51 Cal.App.2d 170, 172-173 [124 P.2d 367], it is said:

"While a judgment is but the original debt or liability in a new form . . ., it has, under our system, a certain finality and although it may be set aside through some form of direct attack permitted under our law it may not be indirectly attacked. . . .

". . . Parol evidence is not admissible to change the legal effect of a judgment or the record of it in any material respect."

In what we have said we have herein applied the foregoing rules.

It appears that the judgment was indefinite as to the amount of water that had customarily been served to the land of real parties through the ditch across the servient property and was uncertain also as to the times during which such water was delivered. Concerning these ambiguities, it would have been proper in a proper proceeding for the respondent court to have taken evidence concerning such accustomed flow and use, but neither in this proceeding in contempt nor in a civil or equitable action, save one perhaps for reformation on appropriate grounds, could the trial court have changed in any manner the nature, location or extent of the servitude of the ditch, its size, capacity or the duty of its maintenance. These things had been finally adjudicated between these parties. We have discussed these matters because real parties, responsive to the contention of petitioners that the respondent court had exceeded its jurisdiction in that it departed from the contempt proceeding and went into other fields, here contend that respondent court was urged to do so by petitioners who may therefore not now complain. Certainly, it appears that petitioners acquiesced, participated in and to a certain extent urged the trial court to thus depart from the issues posed in the contempt proceeding. But from what we have said it must be held that the parties themselves were not capable of conferring jurisdiction upon the court in this proceeding over such matters. It cannot be that in a contempt proceeding, even by consent of the parties, a court may render judgments of a civil nature affecting the rights of the parties and this for the reasons expressed in the Heinz case, *supra*. The contempt proceeding cannot be broadened to include adjudications concerning such matters. Nothing done here was done to prevent future contempts. If petitioners here have so acted as to destroy the ditch existing when they conveyed, if it cannot be restored because innocent third parties' rights have intervened, if real parties have suffered civil damages, a civil action is the proper remedy. Contempt will not serve.

For the reasons advanced herein, all adjudications and orders of the court in the contempt proceeding under review, other than the finding that by their acts petitioners

were in contempt of the existing judgment in the civil action, are annulled. The cause is remanded to the trial court to proceed in the contempt proceeding to inflict such punishment in contempt, within the terms of section 1218 of the Code of Civil Procedure, as the court shall deem requisite to adequately punish the contempt found to have been committed. Neither petitioners nor real parties in interest shall recover costs heretofore expended by them.

Schottky, J., and McMurray, J. pro tem.,* concurred.

Petitioners' application for a rehearing was denied June 28, 1956.

*Assigned by Chairman of Judicial Council.