[Civ. No. 9833. Third Dist. Dec. 16, 1960.]

JOSEPH S. BALL et al., Appellants, v. HUGH H. RODGERS et al., Respondents.

R. P. Stimmel, Halpin, Halpin & Leep and Jack Halpin for Appellants.

Chenoweth & Leininger for Respondents.

SCHOTTKY, J.—This is an appeal by Joseph S. Ball and his wife, Avesta Ball, from an adverse judgment in an action brought by them to quiet title to an easement in a ditch right of way over the land of the defendants.

Sometime prior to December 1952, the Balls purchased two parcels of real property from Robert J. Bailey and his wife, Alberta Bailey. When the Balls purchased the property there

existed a large ditch on the Baileys' property which conveyed water from an irrigation canal to the land purchased by the Balls. The deed to the first parcel of property did not expressly grant an easement in the ditch. The Balls commenced an action to have a decree that by the deed to the first parcel an implied easement passed for the continued use of the ditch across the remaining land of the sellers and to compel delivery of the deed to the second parcel with the easement referred to expressly set forth. On July 14, 1953, a judgment was entered in the action. The court decreed that the Balls were the owners of certain real property and that they had the right " 'to receive, at the point where the existing ditch shown on Exhibit A crosses the north line of Parcel C, the accustomed flow of water in said ditch at said point, sufficient for the irrigation of Parcels B and C according to the use and practice of the Anderson-Cottonwood Irrigation District.' '' (See 142 Cal.App.2d 47, 50 [297 P.2d 795].) No appeal was taken from the judgment.

On April 23, 1954, the Baileys sold a portion of their land to third persons. In the deed of conveyance the Baileys reserved a 10-foot right of way for a ditch. Along this strip they constructed a new ditch from the irrigation canal to the point specified in the judgment of July 14, 1953. Thereafter the property sold by the Baileys was improved and a subdivision constructed. The construction was commenced in July 1954 and completed in January 1955. A total of 48 homes were constructed.

On July 2, 1954, the Balls instituted contempt proceedings against the Baileys. The affidavit in support of the request for a citation of contempt referred to the judgment in the civil action, particularly that portion of the judgment which forbade the Baileys committing any acts in derogation of the rights declared by the judgment. It was asserted that the Baileys had destroyed the old ditch and had constructed a new ditch which was inadequate to deliver the accustomed flow of water. A hearing was held in the matter and at the conclusion the court held the Baileys in contempt because the Balls did not receive the accustomed flow of water, and in addition the court determined what the accustomed flow was and placed a duty on the Baileys to maintain the new ditch. Thereafter the matter of contempt was reviewed by this court (*Bailey* v. *Superior Court,* 142 Cal.App.2d 47 [297 P.2d 795]), and this court held that the trial court could only pass on the issue of contempt and that it exceeded its jurisdiction when it proceeded to pass on other matters. The orders in excess

of the contempt adjudication made by the trial court were annulled and the matter was remanded to the trial court for it to impose such punishment as it deemed fit. During the course of the decision this court stated, in effect, that the judgment in the civil suit gave the Balls an easement in the old ditch and that ''Without the consent of all owners interested the existing ditch could not be moved nor the burden of its use increased.''

Thereafter in July 1957, the Balls brought this action against the Baileys and others, including some of the individual home owners in the subdivision, to establish their right to the easement over the lands of the defendants. (The easement sought to be established was the right of way of the old ditch.) The answer denied that the Balls had or were entitled to an easement. Three special defenses were asserted. The first special defense contended that the claim was barred by the decision of the court in the first action between the parties which assertedly established that the Balls had no easement across the Baileys' lands but only a right to receive water at a certain point. The second affirmative defense asserted that the Balls were estopped to assert any claim to a ditch easement because the Baileys had informed the Balls during the negotiations leading up to the sale of the property to the Balls that it was the intent of the Baileys to subdivide the remaining land and that if and when they did, they would construct a new ditch; that the property was sold for subdivision purposes; that a new ditch was constructed which delivered the accustomed amount of water to the Balls' land; that the Balls did not make any objection to the construction of the new ditch or the substitution; and that the Baileys relied on the oral agreement permitting the substitution.

The third special defense, in addition to repeating certain allegations of the second affirmative defense, stated that wide publicity was given to the purchase of the lands for subdivision purposes; that in March 1954, a model home was constructed; that construction of Unit Number 1 of the subdivision was started in July 1954, and completed in October 1954; that Unit Number 2 was started in October 1954, and completed in January 1955; that 87 houses were constructed; that some 1,800 feet of street and gutters were constructed at a cost of over $12,000; that water distribution and sewer systems were constructed at a cost of over $35,000; that the Balls had full knowledge of the construction of the subdivision; that they made no claim to the alleged easement; and

that the Balls were estopped from asserting any claim to an easement in the old ditch.

The trial court found that the judgment of July 14, 1953, which gave the Balls the right to receive water at a certain point, did not give them, nor was it intended to give them, an easement in the old ditch; that the judgment was res judicata on the rights and claims of the Balls to the ditch right of way and was a bar to the action; and that as a result the Balls were barred from asserting any right of way or easement in the old ditch. As to the second special defense, the court found that the Baileys constructed the new ditch; that the Balls knew the Baileys were constructing a new ditch as a replacement for the old ditch; that the ditch as constructed was not on grade; that the Baileys stated in the presence of the Balls that they would employ an engineer to establish the grade and put the new ditch on grade; that the Balls knew that the work was being done; that the Balls took no action except by filing a *lis pendens* in each of the actions against the Baileys; that the new ditch had been used from 1954 through 1958; that there was no agreement as to substituting the new ditch for the old; that the new ditch was not constructed in pursuance to any oral agreement; that the judgment in the first action was res judicata; and that the construction of the new ditch and delivery of water through it complied with the judgment.

As to the third special defense, the court found that the Baileys sold their land to certain people who subdivided it; that construction of a model home was started in March 1954, and completed in May 1954; that construction of homes in Unit Number 1 of the subdivision was begun in July 1954, and completed in October 1954; that construction of homes in Unit Number 2 was commenced in October 1954, and completed in January 1955; that 48 homes were built; that in connection with the completion of the subdivision streets were paved, sidewalks and gutters constructed, sewer lines constructed and water lines laid; that the Balls had full knowledge that the Baileys' property had been purchased for the purpose of constructing a subdivision; that the construction of the subdivision was clearly visible to the Balls; that they saw the construction; that they had knowledge that houses were being sold and that the purchasers were moving into the homes; that all the construction work and the occupancy of the homes took place in the immediate view and with the complete knowledge of the Balls who made no comment and

took no action except by filing *lis pendens* in the original and contempt actions; that the old ditch right of way extends through 10 lots and through a majority of the 10 houses constructed on the said lots; that the Balls knew that the subdivision and lots would extend across the old ditch and right of way they were asserting; that none of the defendants had actual knowledge of the claim of the Balls but that they had constructive knowledge because of the *lis pendens* filed in the previous actions; that they were not purchasers without notice; and that the defense of estoppel was not available to them. As conclusions of law the court determined that the Balls were not entitled to a decree that they were the owners of an easement in the old ditch; that the defendants were entitled to a decree stating that they are the owners of their respective lands free and clear of any right, title or claim of the Balls. Judgment was entered accordingly and this appeal followed.

Appellants first contend that the decision of this court in *Bailey* v. *Superior Court, supra,* in which this court interpreted the judgment of the court in the original action between the parties was res judicata as to the right of the appellants to have their title quieted in the old ditch. In *Bailey* v. *Superior Court, supra,* this court said at page 56 : ''. . . It is obvious from those portions of the complaint, the findings and the judgment in the civil action . . . , that the object of the plaintiffs was to have a declaration of implied easement. The judgment rendered in the civil action declared that, by virtue of their ownership of the lands conveyed and agreed to be conveyed to them by petitioners, real parties and their succesors in interest were entitled to the right in perpetuity to receive at the point where the existing ditch crossed their north line the accustomed flow of water in said ditch sufficient for the irrigation of their land. Along with this went, of course, the usual secondary easement for maintenance and repairs of that ditch. But this was a fixed and certain servitude upon petitioners' land in favor of real parties' land and its implied creation cast no personal duty on petitioners save a negative duty to respect it. Without the consent of all owners interested the existing ditch could not be moved nor the burden of its use increased.''

This court further said at page 58 in the Bailey case, ''but neither in this proceeding in contempt nor in a civil or equitable action, save one perhaps for reformation on appropriate grounds, could the trial court have changed in any manner the nature, location or extent of the servitude of the ditch, . . . .

These things had been finally adjudicated between these parties. . . ." It is clear that this court interpreted the judgment in the original action in the contempt action. It is also clear that the interpretation of the judgment was not necessary for the decision in the case and was not in issue. ▮ "Questions passed upon in the opinion of a court in rendering a judgment are not necessarily within the doctrine of res judicata. The reasoning and opinion of the court upon a subject, on the evidence before it, do not have the force and effect of the thing adjudged, unless the subject matter is definitely disposed of by the judgment of the court." (30A Am.Jur., Judgments, § 380, pp. 429, 430.) ▮ ". . . [W]hat has been adjudicated is to be determined not from the opinion rendered but from a consideration of the judgment actually entered in reference to the issues presented for decision." (*Adams* v. *Pearson,* 411 Ill. 431 [104 N.E.2d 267, 270].)

▮ As stated by our Supreme Court in *Dillard* v. *McKnight,* 34 Cal.2d 209, 214 [209 P.2d 387, 11 A.L.R.2d 835], "the application of the principle of res judicata in a given case depends upon an affirmative answer to these three questions: Was the issue decided in the prior adjudication identical with the one presented in the subsequent litigation? Was there a final judgment on the merits? Was the party against whom the principle is invoked a party or in privity with a party to the prior adjudication?"

▮ The issue presented on appeal in the contempt action was whether the contempt judgment imposed burdens on the Baileys in addition to finding them in contempt. The issue as to the meaning of the original judgment was not before the court in the contempt action and any statement as to it was mere dictum. Since the issue was not presented in the prior action it could not be res judicata as to the present action.

▮ We are of the opinion that the interpretation of the judgment by the trial court was reasonable and proper. The judgment in the original action read in part: "That plaintiffs are owners and possessors of those certain parcels of real property . . . ; that as such they and their successors in interest are entitled to and they are hereby awarded, the right in perpetuity to receive, at the point where the existing ditch shown on Exhibit A crosses the north line of Parcel C, the accustomed flow of water in said ditch at said point, sufficient for the irrigation of Parcels B and C. . . ."

The judgment as interpreted by the trial court awarded the appellants the right to receive water at a specified point in

sufficient quantities to irrigate appellants' land. It did not grant an easement in the existing ditch. Under this analysis of the judgment there is nothing ambiguous about it. It became final and whether or not it was erroneous in not providing an easement is immaterial. It is determinative of the right of the appellants.

The construction we have placed upon the judgment is the construction appellants asserted before this court in their opposition to the issuance of a writ of review in the contempt action.

In answer to the statement of the Baileys in the petition for a writ of review that they were not required to maintain and clean any ditch or aqueduct for the transportation of water to the point specified in the judgment, the Balls stated:

". . . This is an empty philosophy for the reason that, as we have reiterated numerous times previously, that the original Judgment provides that plaintiffs and respondents are entitled to have the defendants and petitioners deliver the water at this given point in a certain quantity, specifying the amount, the same being in accordance with the rules and regulations of the Anderson-Cottonwood Irrigation District, whatever they may have necessary for the irrigation of this land, *and it does not make any difference whether the water is delivered by a bucket, pipe line, or by an open ditch.* . . ." (Emphasis added.)

In said opposition it is also stated concerning the allotment of water to the Balls that "how it is to be delivered seems to be left to the discretion of the petitioners and defendants [Baileys]; . . . ."

Appellants also assert that if the language in the decision in *Bailey* v. *Superior Court* is not res judicata then it is binding upon the principle of *stare decisis.* The answer is that the doctrine of *stare decisis* does not apply to dictum. (See *Estate of Watkins,* 16 Cal.2d 793 [108 P.2d 417, 109 P.2d 1].)

"The doctrine of *stare decisis* does not require us to follow those cases to the extent of assuming what facts were proved when the evidenec is before us. It is a fundamental rule of that doctrine that a decision is not authority for what is *said* in the opinion but only for the points *actually involved* and actually decided. [Citing cases.] The rule of *stare decisis* is a rule of public policy. For the preservation of harmony and for the stabilization of the law the courts will ordinarily follow precedents when the same points arise in subsequent litigation, although they will not persist in an absurdity or perpetuate a manifest error. There is no kinship

between *stare decisis* and *obiter dictum*. Whatever may be said in an opinion that is not necessary to a determination of the question involved is to be regarded as mere dictum. [Citing cases.] The statement of a principle not necessary to the decision will not be regarded either as a part of the decision or as a precedent that is required by the rule of *stare decisis* to be followed [citing cases], no matter how often repeated. [Citing case.] Expression of dictum is not binding on a court inferior to that which rendered the decision. [Citing cases.]'' (*Childers* v. *Childers*, 74 Cal.App. 2d 56, 61-62 [168 P.2d 218].)

Respondents Bailey have asked this court to strike or otherwise eliminate a certain finding that the Baileys keep in repair and maintain the ditch. The Baileys did not appeal. ''. . . It is well settled that on appeal errors affecting a party who does not appeal will not be reviewed, . . . .'' (*Salter* v. *Ulrich*, 22 Cal.2d 263, 268 [138 P.2d 7, 146 A.L.R. 1344].)

No other points require discussion.

The judgment is affirmed.

Warne, J. pro tem.,* concurred.

VAN DYKE, P. J.—I dissent.

The majority have declared, first, that the interpretation by this court of the judgment in *Ball* v. *Bailey* rendered in the Superior Court of Shasta County in proceeding No. 18731 therein, which interpretation appears in *Bailey* v. *Superior Court*, 142 Cal.App.2d 47 [297 P.2d 795], was *obiter dictum*. While I do not agree that the construction of the trial court's judgment by this court in the case referred to was *obiter dictum*, I will not discuss the matter for the reason that the judgment appealed from herein ought to be reversed because the construction of that judgment by the trial court in this case cannot be supported. The construction of that judgment is a question of law, and this court is not bound on appeal by the construction adopted in the trial court. (*Brown* v. *Superior Court*, 110 Cal.App. 464, 466-467 [294 P. 428]; *Verdier* v. *Verdier*, 121 Cal.App.2d 190, 192 [263 P.2d 57].) The same rules of interpretation apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing. (*Ex parte Ambrose*, 72 Cal. 398 [14 P. 33]; *Rinaldo* v. *Board of Medical Examiners*, 123 Cal.App. 712, 715 [12 P.2d 32].)

*Assigned by Chairman of Judicial Council.

"In interpreting a judgment, it is proper to refer to the circumstances surrounding its making—that is, to the condition of the cause in which it was rendered. The whole record may be examined, including the verdict or findings on which the judgment is based. And resort may be had to the pleadings and issues joined thereunder to explain and limit the language of a judgment." (28 Cal.Jur.2d, Judgments, § 77, p. 713.)

The judgment to be interpreted was rendered July 14, 1953, and it appears herein that at that time there was no other ditch running across the lands of the defendants Bailey and to the lands of the plaintiffs Ball. The judgment decreed:

"That plaintiffs [Ball] are owners and possessors of those certain parcels of real property hereunder described as Parcels B and C; that as such they and their successors in interest are entitled to and they are hereby awarded, the right in perpetuity to receive, at the point where the existing ditch shown on Exhibit A crosses the north line of Parcel C, the accustomed flow of water in said ditch at said point, sufficient for the irrigation of Parcels B and C according to the use and practice of the Anderson-Cottonwood Irrigation District.

"That defendants [Bailey] and their successors in interest of any part of that certain parcel of real property hereunder described as Parcel A be, and they are hereby, restrained in perpetuity from acts in derogation of aforesaid right."

Exhibit A to the judgment is a plat showing Parcels A, B and C therein referred to and showing extending from A into C the "existing ditch." The language and the plat in connection therewith, therefore, show with certainty the course of the ditch referred to through the lands of the parties. But the judgment is uncertain as to the perpetual right of the Balls since it speaks of that right as one "to receive, at the point where the existing ditch shown on Exhibit A crosses the north line of Parcel C," water for irrigation of the Ball lands. Are the Balls given a bare right to receive water at that point somehow and through some undisclosed means of transporting water from some undisclosed source? If so, it is a strange right, but since that is all the judgment says about it the necessity arises of considering the findings, and perhaps the pleadings, in order to determine with certainty just what the rights of the Balls were adjudicated to be. It is best to take the pleadings first. The complaint by the Balls on October 7, 1952, against the Baileys contains four causes of action. We are here concerned only with the first, second and fourth causes.

By the first count plaintiffs allege that they own a parcel of land particularly described in Exhibit B attached to the complaint (I will hereafter call that Parcel B) ; that the defendants were former owners of Parcel B and that plaintiffs took title from them January 9, 1951, at which time "a large ditch for conveying water to the property of the plaintiffs crossed the remaining property of the defendants"; that said ditch was obviously, permanently and openly used for the benefit of all the property of the defendants; and that said ditch ever since the taking of possession of Parcel B by the plaintiffs had been used by the plaintiffs for the purpose of irrigating Parcel B; that Parcel B is located in the Anderson-Cottonwood Irrigation District and plaintiffs have no other means of access for securing water from the district's canal without the use of the aforesaid ditch; that the defendants have threatened to and will destroy the ditch, preventing the plaintiffs from securing water unless restrained. The second cause of action has to do with a second parcel of land, Parcel C. By the second count it is alleged that Parcel C has been purchased by the plaintiffs from defendants by a written agreement; that the money has been deposited in escrow but that the deed has not been delivered; that plaintiffs have demanded that the deed to be delivered contain a grant of an easement to carry water to Parcel C through the same ditch referred to in count one. The fourth cause of action is one for declaratory relief wherein the allegations of the other counts as to the ditch and the claimed rights of the plaintiffs to transport water thereby to their parcels of land, one already owned and one being purchased under written contract, are made a part by reference.

It is alleged that a dispute has arisen as to the "respective rights and duties and obligations of the parties hereto with respect to the use of the existing ditch more particularly referred to hereinabove," and it is asked that a declaration of rights and duties of the respective parties be made. There can be no doubt but that this action was an action for the declaration of an implied easement resulting, and to result, from a conveyance of two parts of a large parcel of land, all of which had been used under such conditions that the part when conveyed would be entitled to a servitude over the part retained. No other cause of action is stated. No other relief is asked. The answer admits that when plaintiffs took title and possession of the property they were buying, a large ditch for conveying water to that property crossed the remaining lands of the defendants and that the ditch was obviously, permanently and

openly used for the benefit of the property conveyed. Further, that since the plaintiffs had so taken possession the ditch had been used by them for the purpose of irrigating their property. In short, the answer admits that when Parcel B was conveyed the servitude claimed passed with the conveyance whether referred to therein or not, and that a like result would follow on conveyance of Parcel C. Therefore, as to the basic right to the servitude, there was no issue, and the easement sought must perforce be adjudged unless affirmative defenses were pleaded and proved. But it was further pleaded in the answer that when they were negotiating for purchase of the property, the parties agreed that the ditch "described in Paragraph VI of the Complaint" would be abandoned when the defendants sold their adjoining land on the north, or subdivided the same into residential lots; and that it was further agreed that the plaintiffs could use the water from the ditch until such subdivision or sale. It was alleged that the defendants would not have sold the land without such understanding and agreement for the reason that they were already contemplating sale of their remaining property for subdivision purposes, and that the "permanent existence of an open ditch through Defendants' land would totally destroy the value of their said land for said purposes, and for all purposes except farming and the pasturing of livestock." Answering the allegation that they were threatening to discontinue the ditch, the defendants said that they would "discontinue said open ditch and destroy the same when they sell their adjoining land or subdivide the same." The court found against these "confession and avoidance" pleas.

Turning now to the findings of fact and conclusions of law, the court found that when the action was filed plaintiffs were the owners and in possession of Parcel B and also of Parcel C, except that with regard to Parcel C, "which forms a part of the hereinabove described property," title had not passed, but was in process of passing "as herein subsequently set forth and found." The court found that prior to the filing of the action and before the sale of Parcels B and C the Baileys were the owners of land contiguous to that conveyed called Parcel A; that all of the property had been owned by the Baileys and used "as a whole, of which the portions sold by defendants to plaintiffs forms a part," and was situated within the Anderson-Cottonwood Irrigation District; that "there was constructed and maintained by Defendants upon the premises a ditch for the purpose of conveying water for the irrigation

of the lands of the Defendants including the tracts 'B' and 'C' now owned by Plaintiffs''; that it was true that by means of said ditch Parcels B and C, and each of them, received in times past an accustomed flow of water sufficient for the irrigation of said parcels according to the use and practice of the Anderson-Cottonwood Irrigation District, and that said water entered Parcel C where said ditch crossed the north line of said parcel and passed thence across Parcels C and B by means of said ditch; that said ditch was in existence and used for the purpose of irrigating Parcels B and C at the time plaintiffs purchased said property from defendants; and that the right to receive the accustomed flow of water through said ditch for use on said property is an easement and appurtenance to Parcels B and C and conveyed as such appurtenance in the conveyances executed by the said defendants to plaintiffs, although not specifically described in said conveyances; and that the plaintiffs have the right to the accustomed flow and allotment of water from the supply of the Anderson-Cottonwood Irrigation District to and upon said Parcels B and C at the point where said ditch crosses the north line of said Parcel C. It was further found as follows:

''It is true that at the time of taking possession of and purchasing the property from the defendants as hereinabove alleged, a ditch for conveying water from the supply of the Anderson-Cottonwood Irrigation District for the irrigation of said property entered on said property; that said ditch was obviously, permanently and openly used for the benefit of said property of plaintiffs; and that said ditch ever since the taking of possession of said property by plaintiffs has been used by the plaintiffs for irrigating the property of the plaintiffs.

''It is true that the property of the parties hereto is located in the Anderson-Cottonwood Irrigation District and the plaintiffs have no other means of access for securing water from the Canal of the Anderson-Cottonwood Irrigation District without the use of aforesaid ditch which in times past has conveyed water onto their property for the irrigation thereof.''

The court further found as follows concerning the ditch referred to: ''It is true that the location of the ditch in question exists and is set forth on Plaintiffs' Exhibit 3, a photostatic copy of which is hereunto attached, marked Exhibit 'A' and by this reference made a part of these findings.'' This Exhibit ''A'' to the findings is the same exhibit designated as Exhibit ''A'' to the judgment. It is apparent that the right adjudicated as being in the plaintiffs was not merely a right to receive

water at the point where the existing ditch referred to crossed the north line of Parcel C but included a declaration of a servitude in favor of Parcels B and C and against the remaining lands of the Baileys, consisting of the right to use the ditch to convey water from the canals of the irrigation district to the plaintiffs' lands.

Although it is not necessary to refer to the trial court's memorandum of decision since it is no part of the judgment roll, nevertheless it is interesting to read it since it was introduced in evidence in the trial of this case. Said the trial court: "It is not disputed herein, and is therefore likewise found, that Parcel A has at all times been permanently and obviously used by defendants for the conveyance of irrigation water to Parcel C for the benefit thereof (by means of the ditch shown in blue on Exhibit A, and crossing both said parcels)." Concerning the defendants' claims that so far as Parcel C was concerned which was, as the term goes, "in escrow," the court said the terms of the escrow fixed the obligations of the parties, and since they did not include express directions that a conveyance should include the easements sued for, the matter, so far as said parcel being purchased was concerned, was foreclosed from inquiry. During the escrow a demand had been made on the title company that the deed to be prepared by them contain an express declaration of easement, which demand had been refused. The court said: "If the deed to Parcel B, in the absence of express reservation, conveyed the existing water right for the benefit of Parcel B; so likewise, for the same reasons (being those set forth at length above), the deed to Parcel C, in the absence of express reservations, conveys the water right for the benefit of Parcel C. All terms of the escrow instructions appear to have been met, and there appears no reason why the Title Company should not forthwith close the escrow as it stands, thereby giving plaintiffs a deed which by implication of law conveys the water right."

The construction of the old judgment made by the trial court in the case here on appeal is not supported by the record. In fact, it is diametrically opposed to that record.

While I believe that what I have said demonstrates that the interpretation placed upon the judgment by the trial court and by the majority is wrong and against the record, I am at a loss to understand what sort of right the trial court and the majority consider was adjudged to be in the Balls. It cannot be that as so interpreted the judgment gives any rights whereunder the Balls can use the lands of the Baileys to convey

water to the Ball lands, for the position taken throughout has been that the judgment did not declare such rights. It follows that if the easements claimed in the pleadings and by the pleadings admitted to exist were not adjudged, then the Balls obtained no right to obtain water by conveying it through or over any part of the Bailey property. Notwithstanding the admitted right, the judgment is now construed as refusing to declare the admitted right. What then has been declared? A bare right to receive water on an owner's land at a designated point on his boundaries or at any other point on his land is simply one of the rights in the "bundle of rights" which make up ownership. The right in the Balls to "receive" water on their lands was wholly outside the issues in the case. That right does not spring from the judgment, but from admitted ownership of the land. If then that is all that the judgment declared, the judgment itself, being wholly outside the issues, all of which appears in the judgment roll, is void and ought to be so declared. (*Baar* v. *Smith,* 201 Cal. 87 [255 P. 827], and cases cited therein.)

While the judgment, construed as it has been by the trial court and the majority, is void as being beyond the power of the court to declare and while for that reason the judgment appealed from which refuses to quiet title in the Balls to the easement across the Bailey lands could be affirmed, nevertheless I think the judgment cannot be so construed, but on the contrary that it declares the easement claimed in the present suit, and therefore the present judgment ought to be reversed.

A petition for a rehearing was denied January 13, 1961. Van Dyke, P. J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied February 8, 1961.