[Civ. No. 26943. Second Dist., Div. Four. June 12, 1963.]

DONALD A. JONES, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

Jones & Jones and Fenton E. Jones for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, John J. Tully, Jr., and Weldon L. Weber, Assistant City Attorneys, for Defendants and Respondents.

BURKE, P. J.—Plaintiff seeks a disability pension from the City of Los Angeles (City) and Board of Pension Commissioners (Board). He was a duly appointed police officer of the City from April 11, 1941, to March 16, 1954, when he resigned for personal reasons. He filed his application for such pension on September 2, 1953, under the provisions of article XVII of the City Charter of Los Angeles, section 182, for service-connected disability, and alternately under section 182-¼ for nonservice-connected disability. It is conceded that this filing was timely, being within six months of the date of injury.

On March 2, 1954, the Board at a regular meeting took

action filing petitioner's application "without prejudice" and, as found by the court, "pending final determination of petitioner's status as a member of the Police Department. . . ." No evidence was heard regarding disability. Applicant resigned 14 days later, on March 16, 1954. No written notice of the action of the Board in "filing" his application "without prejudice" was given applicant, but at some date, undisclosed, applicant acquired knowledge of such action.

No further action was taken on the application by either the Board or applicant until more than four years later, when applicant, on June 18, 1959, in writing, requested a hearing on such application. The request for a hearing was denied by the Board on July 14, 1959, " 'on the basis that the application was deemed to be denied, under the provisions of section 363 of the City Charter, 90 days after the Board consideration on March 2, 1954.' " On May 31, 1962, applicant filed a petition for a writ of mandate to compel a hearing on such application, which was denied by the superior court. The conclusions of law supporting such judgment recited that petitioner's application for a disability pension was denied "not later than June 14, 1954 by the failure of the . . . Board . . . to act thereon prior thereto." Such date, June 14, 1954, was 90 days from the date of applicant's resignation. Further, the conclusions of law recited that the writ of mandate and petitioner's cause of action "are barred by the provisions of sections 363 and 376 of the Charter of respondent City and of sections 312 and 338, subdivision 1, of the Code of Civil Procedure." The petitioner, plaintiff, appeals from such judgment.

The issues to be determined on this appeal are the following:

(1) Did the action of the Board on March 2, 1954, in "filing" plaintiff's application for a disability pension, "without prejudice," render inoperative the charter provisions by which such applications are "deemed" denied if no action is taken thereon in 90 days from their filing?

(2) Did such action of the Board constitute the taking of plaintiff's application under "deliberation," thus tolling the statute of limitations until final action of the Board rejecting, or refusing to act upon, the claim?

(3) Is this action barred by the statute of limitations?

Section 363 of the city charter dealing with the filing of claims for pensions provides, in part, that "In all

cases such claim shall be approved or rejected in writing and the date thereof given. Failure to act upon any claim or demand within ninety (90) days from the date the same is filed with the City Clerk shall be deemed to be a rejection thereof; . . ." Accordingly, it was incumbent upon the Board to hear applicant's claim and approve or deny it in writing.

This is the mandate of the section and the plain duty of the Board. If the Board fails in its duty for a period of 90 days then the automatic rejection provision becomes applicable. However, as counsel for defendants conceded at the trial it is commonplace for the Board to act on a claim after the 90-day period has expired. Thus, this provision can be and often is waived by the Board and waiver is evidenced by the Board taking action after the expiration of the period.

█ It is clear that the Board did not intend that its inaction within the 90-day period in the instant case be considered by applicant as a rejection of his claim since 180 days after the claim was filed by applicant the Board ordered that the claim be "filed without prejudice." █ The term "without prejudice," in its general adaptation, means that there has been no decision of the controversy on its merits. (*Wilkins* v. *Wilkins*, 95 Cal.App.2d 611, 613 [213 P.2d 752].)

█ The record makes clear in the instant case that at no time, either before or after the Board's action of March 2, 1954, did the Board consider plaintiff's application for a disability pension on its merits. Furthermore, at no time has it ever approved or rejected the claim in writing in accordance with the mandate of section 363 of the charter. In legal effect we construe the Board's action of March 2, 1954, as informing claimant that his claim would receive consideration at some later date after his current employee status had been determined; but when any question as to that inquiry was ended through plaintiff's resignation the Board failed to discharge its duty to determine the merits of his claim.

When four years later claimant pressed the Board for its answer he was told, in effect, that its failure to act within 90 days after his resignation should have been considered by him as a rejection and that from that time he had been free to resort to the courts.

The 90-day-automatic-deemed-rejected provision of the charter, to which the Board referred in its July 14, 1959, action, relates back to the original "filing" of the claim by

applicant, not to any interim order of the Board that the claim be "filed" such as was made on March 2, 1954. ▪ Once the Board continued its deliberation on the claim beyond the 90-day period, it effectively waived the operation of the "deemed rejected" provision. ▪ When the Board indicated that it was deferring action until some later date such evidence that consideration of the claim was pending tolled the statute until definite action was taken and notification thereof given to claimant. (*Dillon* v. *Board of Pension Comrs.*, 18 Cal.2d 427, 431 [116 P.2d 37, 136 A.L.R. 800].)

▪ By its action of July 14, 1959, the Board would charge plaintiff for the delay occasioned by its failure to discharge its own legal responsibility, to approve or deny the claim in writing. This, it cannot do. Any time consumed while the Board had the claim under deliberation is not chargeable to claimant. If such were not the law, then a claimant could be deprived of benefits he has earned and to which he has contributed, assuming the claim to be meritorious, by the dilatory process of deferring consideration, from time to time, until the statutes of limitations have run.

▪ Plaintiff could not have brought action on his claim prematurely. He must await its approval or rejection or notification of the Board's refusal to act on his claim. His cause of action ripens upon rejection, or refusal, although the statute of limitations operating upon his right to file suit relates to the date of filing his application for retirement for disability, exclusive of the period of the Board's deliberations. (*Skaggs* v. *City of Los Angeles*, 43 Cal.2d 497, 500 [275 P.2d 9].)

▪ If the Board fails, neglects or refuses to act, claimant may seek to compel it to do so by petition for writ of mandamus. ▪ While, under our interpretation of the action of the Board of July 14, 1959, it has never considered and rejected his claim on its merits, such action did place plaintiff on notice that the Board was refusing to consider his claim and, therefore, effectively stopped the tolling of the statute of limitations.

In *Dillon* v. *Board of Pension Comrs.*, *supra*, 18 Cal.2d 427, 431, a police officer had committed suicide in April 1934. His widow, within six months thereafter, filed her claim for a pension, claiming that disabilities suffered by her husband in the course of his duties brought about the condition of mental unbalance during which he took his life. The claim was rejected

in February 1935. In December 1938 the widow filed mandamus proceedings. This was approximately four years after rejection and the three-year statutes of limitations, sections 312 and 338 of the Code of Civil Procedure, were held to apply and the writ was denied.

In *Dillon* the court declared (pp. 430-431) that "If the Board of Pension Commissioners refuses to acknowledge this right [to a pension] upon application, [claimant] can properly bring an action of *mandamus* in the superior court to review the soundness of the board's decision, and to establish as a matter of law that [claimant] is entitled to the status of a pensioner. [Citations.] . . . A cause of action accrues when a suit may be maintained thereon, and the statute of limitations therefore begins to run at that time. [Citation.] The cause of action to establish the right to a pension accrued to plaintiff at the time of her husband's death. At any time following the death she could demand a pension from the board and upon refusal could maintain a suit to enforce such action. . . . Since, however, action by the board must precede court proceedings to obtain a pension, a claimant who has applied to the board cannot sue for the pension while the claim is under consideration by the board. It is well recognized that the running of the statute of limitations is suspended during any period in which the plaintiff is legally prevented from taking action to protect his rights. [Citations.] The running of the statute of limitations, therefore, is tolled during the period of the board's deliberations, that is, from the time the claim is filed until the board's decision is rendered."

▪ In the instant case plaintiff's claim to a disability pension arose at the time of the purported disability. He was required to file a claim for pension within six months after the occurrence of such disability. This he did. Thereafter it was the duty of the Board to approve or reject the claim in writing. The Board, 180 days after the filing, indicated the matter was "filed without prejudice" pending determination of plaintiff's employment status, a question which had only indirect bearing on plaintiff's entitlement to a disability pension. "[U]ntil the board's decision is rendered," in the words of *Dillon, supra,* or until the Board refused to act, the statute of limitations is tolled.

*Skaggs* v. *City of Los Angeles, supra,* 43 Cal.2d 497, at page 500, repeats the holding of the *Dillon* case that the running of the statute of limitations against an action to compel a board

of pension commissioners to pay plaintiff a pension is tolled. during the board's deliberations, that is, from the time the pension application is filed until the board's decision is rendered.

In this case we hold plaintiff's right to commence an action in mandamus arose upon the Board's refusal in writing to hear his application, dated July 14, 1959. The period of deliberation of the Board from the filing of plaintiff's application, September 2, 1953, to the date of such refusal to hear such application was 5 years, 10 months and 12 days. The time interval between the filing of the application, September 2, 1953, and the filing of the mandamus proceeding, May 31, 1962, was 8 years, 8 months and 29 days. Deducting the former period of deliberation from the total period embraced leaves a period of 2 years, 10 months and 17 days, which is within the applicable 3-year period of limitations.

In *Williams* v. *Bergin,* 116 Cal. 56, 61 [47 P. 877], it is stated: "A party cannot by his own negligence, or for his own convenience, stop the running of the statute. [Citations.] The rule rests upon the principle that the plaintiff has it in his power at all times to do the act which fixes his right of action. The reason of the rule, however, ceases when the right of action is not under his control, but depends upon the act of another; and when the act upon which his right to maintain an action depends is an official act to be performed by a public officer in the line of his official duty, there is no presumption that any delay in its performance was unreasonable."

The judgment is reversed.

Jefferson, J., and Kingsley, J., concurred.