[Civ. No. 30242. First Dist., Div. One. Jan. 19, 1973.]

ROBERT W. WILLIAMS et al., Plaintiffs and Respondents, v. CITY OF OAKLAND et al., Defendants and Appellants.

**COUNSEL**

Edward A. Goggin, City Attorney, and George M. Cahalan, Assistant City Attorney, for Defendants and Appellants.

Davis, Cowell & Bowe and Philip Paul Bowe for Plaintiffs and Respondents.

## OPINION

**ELKINGTON, J.**—The appeal before us concerns provisions of the Charter of the City of Oakland relating to disability retirement of members of its police and fire departments (hereafter "members").

Sections 92½, 100½, and 243(a) of the charter concern such members whose disability arose in the performance of· their duty. Section 243(b) relates to disabilities *not* arising in the performance of duty.

Section 100½, as relevant, provides: "Any member of the Fire Department sustaining an injury while in the performance of his duty shall be entitled to receive [certain benefits]; and the [Oakland City] Council shall allow the member so injured full pay during the continuance of his disability or until such time as he may be retired on a pension."

Section 92½ contains similar provisions relating to members of the city's police department.

It will be seen that, at least ordinarily, the Oakland City Council is the body authorized to determine the eligibility of a disabled member for such full pay.

Section 243(a) of the charter provides that any member ". . . who becomes incapacitated for the performance of duty by reason of any injury received in, or illness caused by or arising out of the performance of duty and which disability continues without interruption of one (1) year, may be retired, . . ." on a retirement allowance.

Section 243(b), as relevant, states, "Any member . . . who becomes incapacitated for the performance of duty from any cause *not included in the provisions of the preceding paragraph (a) and who shall have completed at least ten (10) years of service in the aggregate, shall be retired upon a retirement allowance . . . .*"

The retirement allowance under section 243(b) for disability *not* incurred in the performance of duty is smaller than that authorized by section 243(a).

The charter creates the Oakland Police and Fire Retirement Board (hereafter "Board").

Another provision of section 243(b) states: "The question of retiring a member under this section [243(a), (b)] may be brought before the Board on the Board's own motion, by recommendation of the City Manager or by petition of said member . . . ." Section 236 of the Charter provides: "The Board may and in disputed matters shall hold public hearings in all

proceedings pertaining to retirement and to the granting of retirement allowances, . . ."

Thus, jurisdiction over retirement of members, and the granting or denial of retirement allowances, is conferred upon the Board by the charter.

Respondent Robert W. Williams was a member of the fire department of the City of Oakland. Concededly he became permanently disabled from performing the duties of such employment. Within one year of the onset of his disability he applied to the Board for retirement for reasons "arising out of the performance of duty" as permitted by section 243(a).

Following a hearing the Board found and determined "that the said Robert W. Williams is incapacitated for the performance of duty in the Fire Department because of heart injury, and that the said disability arose out of injury received in and caused by, the performance of duty in the Fire Department and is service connected; . . ." The Board then determined that "since said disability has not continued without interruption for one year, the *application for disability retirement is denied without prejudice.*" (Italics added.)

Williams then, in accordance with section 100½, applied to the city council for "full pay during the continuance of his disability or until such time as he may be retired on a pension." His application was based on the determination of the Board that his disability arose out of "the performance of duty in the fire department and is service connected."

The city council, feeling that Williams' disability was *not* incurred in "line of duty," refused to allow him "full pay" as requested.

Williams then, "individually and on behalf of all others similarly situated; and Mike Anthony as chairman of the Police and Fire Co-ordinating Council of the City of Oakland," petitioned the superior court for a writ of mandate (Code Civ. Proc. § 1094.5) against the City of Oakland and certain of its agencies and officers (hereafter collectively, "City of Oakland").

The principal issues presented to the superior court were: (1) "Whether the Board had jurisdiction" to "act upon Mr. Williams' application for service-connected disability retirement" and if it did, (2) whether the Board's finding of "service-connected disability was" binding on the city council; and (3) whether the proceedings constituted a "proper class action."

After a trial the superior court found in favor of Williams on each of

the issues. Judgment was entered, and a writ of mandate issued accordingly. The City of Oakland has appealed from the judgment.

The obvious, and only, purpose of the superior court mandate proceedings was to obtain a judicial declaration that in Williams' and like cases the Board's finding of "service incurred disability" under section 243(a), had binding, *or res judicata,* effect upon a subsequent application to the city council for "full pay" under section 92½ or section 100½.

The issue presented for our consideration, then, relates to the res judicata effect of decisions of local administrative agencies.

Few areas of our law are attended by such uncertainty as is this question. Citing authority, the editors of California Jurisprudence (2d ed.) tell us, "The doctrine of res judicata, as applied to the decisions of administrative agencies, is confused, and has received little systematic consideration by the courts." (2 Cal.Jur.2d, Administrative Law, p. 285, § 172.) Similar conclusions are expressed by other works. (See 2 Am.Jur.2d, Administrative Law, p. 305, § 496; 73 C.J.S., Public Administrative Bodies and Procedure, p. 480, § 147.) The problem seems to lie in the varying types of administrative agencies and their procedures, and widespread disagreement whether their decisions are judicial, quasi-judicial, or administrative only. But we find it unnecessary, ourselves, to here attempt to reconcile the divergent authority.

It is certain that the doctrine of res judicata is much *less* freely applied in the area of administrative decisions, than as it relates to determinations of courts of record. It seems profitable to inquire whether treating the subject decision as judicial, rather than as administrative,· the doctrine of res judicata would even then apply.

Certain fundamental and essential requirements must be met before the doctrine of res judicata will apply to a judgment. The judgment must have been a *final determination* (*Martin* v. *Martin,* 2 Cal.3d 752, 758 [87 Cal.Rptr. 526, 470 P.2d 662]; *Goddard* v. *Security Title Ins. & Guar. Co.,* 14 Cal.2d 47, 51 [92 P.2d 804]; *Scheeline* v. *Moshier,* 172 Cal. 565, 571 [158 P. 222]; *Ball* v. *Rodgers,* 187 Cal.App.2d 442, 448 [9 Cal. Rptr. 666]), and it must have been rendered on the *merits.* (*Dillard* v. *McKnight,* 34 Cal.2d 209, 214 [209 P.2d 387, 11 A.L.R.2d 835]; *Gonsalves* v. *Bank of America,* 16 Cal.2d 169, 173 [105 P.2d 118]; *Folden* v. *Lobrovich,* 153 Cal.App.2d 32, 35 [314 P.2d 56].)

As we have pointed out the decision of the Board in *Williams'*

case was that "since said disability has not continued without interruption for one year, the application for disability retirement is denied *without prejudice.*" (Italics added.) It has repeatedly been held that: "The term *'without prejudice,'* in its general adaptation, means that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another application as if no suit had ever been brought." (Italics added; *Chambreau* v. *Coughlan,* 263 Cal.App.2d 712, 718 [69 Cal.Rptr. 783]; see also *Jones* v. *City of Los Angeles,* 217 Cal.App.2d 153, 157 [31 Cal.Rptr. 761]; *Wilkins* v. *Wilkins,* 95 Cal.App.2d 611, 613 [213 P.2d 752]; *Fleishbein* v. *Western Auto S. Agency,* 19 Cal.App.2d 424, 427 [65 P.2d 928].) It has been said that the "purpose and effect of the words 'without prejudice' in a decree dismissing a bill is to prevent the defendants from availing themselves of the defense of *res adjudicata* in any subsequent proceeding by the same plaintiffs on the same subject matter." (*Brown* v. *Schroeder,* 88 Cal.App. 192, 208 [263 P. 325].)

In reason, we must apply the same criteria to the Board's decision on Williams' application. Doing so we must, and do, hold that the Board's determination was without res judicata effect on Williams' subsequent application to the city council for "full pay" under section 100½.

We recognize that although denying Williams' application without prejudice, the Board nevertheless had made a *finding* that his disability was duty-incurred. ■ But findings of themselves are not res judicata as to their content. "The judgment is the only real conclusion of law and displaces all former statements in the findings on the subject." (*Mason* v. *Del Valle,* 213 Cal. 30, 32 [1 P.2d 419].) ■ "It is well settled that the findings and conclusions of the court do not have the force and effect of an adjudication where the subject matter is not disposed of by the judgment." (*Guardianship of Leach,* 30 Cal.2d 297, 310-311 [182 P.2d 529].)

For the reasons stated, the superior court's conclusion of law, and judgment, that decisions and findings of the Board such as were made on Williams' application, "are binding on the Oakland City Council, and its delegated authorities, in any hearings under Sections 92½ and 100½ of the Oakland City Charter," was erroneous. The judgment must be reversed.

We have, of course, made no determination as to the res judicata effect of final determinations on the merits by the Board. The issue whether the proceedings below were a proper class action becomes moot, and we find it unnecessary to the disposition of the appeal to resolve other points raised by the parties.

The judgment is reversed; the superior court will enter judgment not inconsistent herewith.

Molinari, P. J., and Weinberger, J.,* concurred.

A petition for a rehearing was denied February 16, 1973, and respondents' petition for a hearing by the Supreme Court was denied March 29, 1973. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.