Filed 6/12/23 Certified for Publication 6/30/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RON HACKER,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JACQUELINE M. FABE,<br><br>Defendant and Respondent. | B309997<br><br>Los Angeles County<br>Super. Ct. No. BC341913 |
| CALIFORNIA STATE LABOR COMMISSIONER, DIVISION OF LABOR STANDARDS ENFORCEMENT, DEPARTMENT OF INDUSTRIAL RELATIONS,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>1538 CAHUENGA PARTNERS, LLC,<br><br>Defendant. | Los Angeles County<br>Super. Ct. No. SC099658 |

APPEAL from an amended judgment of the Superior Court of Los Angeles County.  Edward B. Moreton and Holly J. Fujie,

Judges.  Affirmed.

Law Offices of Richard M. Fannan, Richard M. Fannan; Law Office of Richard L. Antognini and Richard Antognini for Plaintiff and Appellant.

David L. Bell, State of California Department of Industrial Relations, Division of Labor Standards Enforcement for Plaintiff and Respondent.

Jacqueline M. Fabe, in pro. per.; Kleinberg & Lerner and Marshall A. Lerner for Defendant and Respondent.

_____

## SUMMARY

The trial court granted a motion by the Labor Commissioner to amend a judgment to add Ron Hacker as an alter ego judgment debtor.  Mr. Hacker appeals.  He contends there was "virtually no evidence" he commingled his assets or operations with those of the judgment debtor; the original judgment was not renewed during the 10-year limitation period; the doctrine of laches bars the alter ego motion; and the denial of an earlier alter ego motion barred the current motion under res judicata principles.

We find Mr. Hacker's arguments lack merit and affirm the trial court's order and judgment.

## FACTS

### 1.     The Back Story

This is our third opinion in this case.  We take some of the facts directly from our earlier opinions.

The litigation began in 2005, when Jacqueline Fabe, an attorney, filed a claim for unpaid wages with the Labor Commissioner against her employer, 1538 Cahuenga Partners,

2

LLC (Cahuenga or the company). Ms. Fabe obtained an award of almost $13,000.

A month after Ms. Fabe filed her claim, Cahuenga and its principal, Mr. Hacker, filed a malpractice suit against Ms. Fabe. Ms. Fabe filed a retaliation claim with the Commissioner. She prevailed on her retaliation claim, and the Commissioner sued Cahuenga, seeking damages (Ms. Fabe's defense costs) for the illegal retaliation. Ms. Fabe also cross-complained in the malpractice suit, seeking indemnity for her legal expenses. The lawsuits were consolidated. Ms. Fabe and the Commissioner (collectively, the judgment creditors) prevailed on all their claims, and judgment was entered on December 11, 2009. (*1538 Cahuenga Partners, LLC v. Fabe* (Jan. 5, 2012, B222023) 2012 Cal.App.Unpub. Lexis 92, pp. *1–*3 (*1538 Cahuenga I*).)

A couple of months later, Cahuenga filed an ex parte application for an order correcting clerical errors in the judgment, and to quash an abstract of judgment Ms. Fabe had filed that named Mr. Hacker as a judgment debtor. The abstract was based on the December 11, 2009 judgment, which erroneously named Mr. Hacker as a plaintiff and cross-defendant. (Mr. Hacker had voluntarily dismissed his action against Ms. Fabe without prejudice in December 2008.) The trial court amended the judgment to delete reference to Mr. Hacker and quashed the abstract of judgment. (*1538 Cahuenga I, supra,* 2012 Cal.App.Unpub. Lexis 92, pp. *15–*16.)

In March 2010, Ms. Fabe filed a motion to add Mr. Hacker to the judgment as a judgment debtor; this was denied without prejudice.

In January 2012, we affirmed the judgment. (*1538 Cahuenga I, supra,* 2012 Cal.App.Unpub. Lexis 92.)

Later that year, on September 14, 2012, an amended judgment was entered in favor of the Commissioner for more than $297,000, plus interest, and in favor of Ms. Fabe for more than $101,000 (to be offset against any recovery by the Commissioner). (*1538 Cahuenga Partners, LLC v. Fabe* (Aug. 31, 2015, B253624) 2015 Cal.App.Unpub. Lexis 6259, p. *3 (*1538 Cahuenga II*).)

For years thereafter, the Commissioner and Ms. Fabe sought to enforce the judgment, without success.

In April 2012, Benjamin Schneider sat for a debtor's examination. As we recounted in *1538 Cahuenga II,* Mr. Hacker resigned as manager of Cahuenga soon after the December 2009 judgment against the company. Mr. Schneider became manager as of January 1, 2010. Mr. Schneider testified he searched for documents requested by the judgment creditors in his apartment (which he said was Cahuenga's office), and the only document he found had a bank account number. The bank account had been closed. He asked Mr. Hacker about bank accounts prior to the time Mr. Schneider became manager, but received nothing from Mr. Hacker. Mr. Schneider testified the company had no money, and that no one received any money or assets from Cahuenga since he became the manager. (*1538 Cahuenga II, supra,* 2015 Cal.App.Unpub. Lexis 6259, pp. *3–*4.) He knew nothing about what happened to the initial capital contributions of the members and never discussed that with Mr. Hacker.

Beginning in August 2012, the judgment creditors' efforts to enforce the judgment included applications for orders requiring Mr. Hacker, Tanya Bogorad (an employee of Cahuenga at the time of the underlying litigation), BAG Fund, Inc., and BAG Fund, LLC, to appear for examination about their knowledge of

4

Cahuenga's assets and liabilities. Mr. Hacker and the others resisted these efforts and sought protective orders. (Mr. Hacker sought an order requiring the judgment creditors to cease any production or other discovery requests "until they make and prevail on an alter ego motion to add him as an additional judgment debtor.") (*1538 Cahuenga II, supra,* 2015 Cal.App.Unpub. Lexis 6259, p. *9.)

The trial court largely denied the protective orders. Among other things, the court observed that " 'This case just has a history of hardball resistance to reasonable requests to enforce the judgment. . . . [W]hat I see is parties . . . saying we are not going to comply. We don't care what you say. Forget it.' " (*1538 Cahuenga II, supra,* 2015 Cal.App.Unpub. Lexis 6259, pp. *9–*10.) The court stated "it had held Mr. Schneider in contempt of court; the records showed 'the names that kept coming up were Ron Hacker and Ms. Bogorad as having some papers and knowledge'; and the motions showed 'an internet work [*sic*] of organizations in which Mr. Hacker is involved and controls.' " (*Id.* at p. *10.)

After a motion for reconsideration, the trial court declined to change its order, stating: " 'Both in terms of personnel and in terms of business transactions and assets, there is a strong potential for there to be property in the possession of the moving parties [Mr. Hacker et al.] or business records in the possession of the moving parties that would shed light on the activities and obligations of the judgment creditors [*sic*]. And the showing is that the moving parties are connected with Cahuenga and each other, that Mr. Hacker had a fundamental role in Cahuenga with evidence that he was instrumental in the business activities of

5

Cahuenga.' " (*1538 Cahuenga II, supra,* 2015 Cal.App.Unpub. Lexis 6259, p. *12.)

Mr. Hacker and the other third parties appealed. In August 2015*,* we affirmed the trial court's orders. (*1538 Cahuenga II, supra,* 2015 Cal.App.Unpub. Lexis 6259.)

In March and April 2016, Mr. Hacker and Ms. Bogorad finally appeared for third party debtor's examinations.

Mr. Hacker could not recall many things, including whether he was the managing member of Cahuenga during the 2009 trial of the case. (He later testified he was.) He could not recall whether various attorneys, who the judgment creditors say appeared in this action on behalf of Cahuenga, ever worked for Cahuenga. He was asked who paid the attorneys to appear on behalf of Cahuenga, and responded that "Cahuenga paid some of them back in the day, I may have paid some of them, and I don't know who paid the others."

Mr. Hacker testified he was the managing member of BAG Fund, LLC, which was created "sometime in—before 2010." He refused to answer who the other members were. He testified BAG Fund, Inc. was "non-existent, suspended," "about a year ago." He was a vice president and shareholder of BAG Fund, Inc.

Mr. Hacker did not remember whether Ms. Bogorad worked for BAG Fund, LLC and BAG Fund, Inc., and then testified she worked for BAG Fund, Inc. "through the attorneys." He refused to answer other questions about BAG Fund, Inc. He testified Ms. Bogorad currently worked for a law firm, and his counsel stated on the record that she was one of his paralegals.

Notably, Mr. Hacker testified that documents relating to Cahuenga's earnings from 2005 to 2010 were in his possession and control "at some point in time," and that he had destroyed

6

them.  (He also testified that "I don't know that we ever had any financial statements.")

At her debtor examination in April 2016, Ms. Bogorad testified that she began working for Mr. Hacker as a paralegal in 1997, and continued working for him up until the time of her examination.  She said Mr. Hacker originally hired her for a company known as Century West Financial, "to work with attorneys."  She worked for Century West for about three years, and after that Mr. Hacker offered her a position working for an attorney whom he had hired to work for Global West Management.  Global West Management paid her as a full-time employee.  She became the paralegal for Cahuenga at the end of 2004 or beginning of 2005.  She was a full-time employee of Cahuenga for four or five years, until the beginning of 2010, when "the company was sold out or transferred whatever is that, and my boss [Mr. Hacker], he lost the company."  She testified Mr. Hacker was still her boss and she still worked for him.

Ms. Bogorad was asked who Mr. Hacker lost the company to, and testified:  "[H]is name was Benjamin and . . . I don't know what he did with the company.  I know it was transferred.  That's what I was told, that the company transferred.  He sold it or just give him—it was a gift.  That's what I don't know, but it was transferred to Mr. Benjamin."

Ms. Bogorad testified that from 1997 "through today," she "essentially worked for Mr. Hacker through various entities."  At the time of her examination, she was being paid by BAG Fund, Inc.

According to Ms. Bogorad, during the time she worked for Cahuenga, the company had a litigation department and employed "at the same time maybe one, two attorney[s]; one,

7

two paralegals." "[I]t was, like, maybe seven, eight attorneys totally, not at the same time, working for the department" over the course of five years. There was a separate accounting department or bookkeeper.

## 2. The Commissioner's Motion

On January 9, 2020, the Commissioner filed a motion to amend the judgment to add Mr. Hacker as the alter ego of Cahuenga. The motion stated the approaching 10-year anniversary of the judgment prompted the Commissioner "to seek to amend that judgment in order to create the *possibility* of obtaining some justice for Ms. Fabe." The Commissioner submitted the debtor examinations of Mr. Schneider, Mr. Hacker, and Ms. Bogorad.

Ms. Fabe filed a joinder to the motion.

Mr. Hacker opposed the motion, making essentially the same arguments he repeats on appeal.

After a hearing, on February 7, 2020, the court (Judge Edward B. Moreton) granted the motion, and signed an order to that effect on June 29, 2020.

On August 3, 2020, Mr. Hacker filed a motion for reconsideration of the court's ruling, citing "newly discovered facts" that the judgment creditors knew Cahuenga was not undercapitalized, "willfully did not collect" assets belonging to Cahuenga in 2012, and "intentionally concealed" that information from the court, instead wrongfully filing the alter ego motion.

On October 29, 2020, the court (Judge Holly J. Fujie) entered the second revised amended judgment adding Mr. Hacker as an alter ego judgment debtor.

On December 4, 2020, the court (Judge Moreton) denied Mr. Hacker's motion for reconsideration. After pointing out

8

various deficiencies in Mr. Hacker's motion, the court stated: "When the Court made its decision to add Ron Hacker as a judgment debtor, it had substantial evidence that supported its finding that 1538 Cahuenga Partners is an alter ego of Ron Hacker and that Mr. Hacker should be added as a judgment debtor. This included evidence that there was a unity of interest because Mr. Hacker exercised complete control over 1538 Cahuenga Partners, that Mr. Hacker controlled the underlying litigation and that he shared attorneys with 1538 Cahuenga Partners, that Mr. Hacker had transferred assets of 1538 Cahuenga Partners to himself, that Mr. Hacker transferred control of the remaining assets in 1538 Cahuenga Partners to Benjamin Schneider, and that Mr. Hacker had destroyed relevant records of assets. This evidence identifies other grounds under the alter ego doctrine to amend the judgment and add Ron Hacker as an additional judgment debtor." The motion for reconsideration did not "identify a new fact, circumstance, or law that would be grounds to modify or amend the prior order," and "[t]his is further grounds to deny his motion."

Mr. Hacker filed a timely appeal from the October 29, 2020 judgment.

## DISCUSSION

As stated at the outset, we find no error in the court's decision to add Mr. Hacker as an alter ego judgment debtor.

1.      **The Alter Ego Finding**

    a.      **The law**

The Supreme Court tells us that "[t]he essence of the alter ego doctrine is that justice be done. 'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach

an equitable result.' " (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301 (*Mesler*).)

Another court explains the equitable doctrine: " 'A corporate identity may be disregarded—the "corporate veil" pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. [Citation.] Under the alter ego doctrine, then, when the corporate form is used to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners.' " (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1341 (*Troyk*).)

" 'In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.' " (*Troyk, supra,* 171 Cal.App.4th at p. 1341.)

"Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other. [Citation.] 'No one characteristic governs, but the courts must look at all the circumstances to

10

determine whether the doctrine should be applied.' " (*Troyk, supra,* 171 Cal.App.4th at p. 1342.)

"The decision to grant or deny the motion lies within the sound discretion of the trial court [citation] and will not be disturbed on appeal if there is a legal basis for the decision and substantial evidence supports it." (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 280.)

### b. This case

After several pages of briefing that characterize Ms. Fabe as having a "near pathological drive" to add him to the judgment; repeatedly describe her actions in 2010 as "fraudulent" and "malfeasance"; and assert she "fabricat[ed]" judgment documents and an affidavit and "resorted to fraud and artifice," Mr. Hacker gets to his argument: that there is "virtually no evidence" of a unity of interest between him and Cahuenga. He contends the Commissioner did not show undercapitalization, commingling of funds, disregard of corporate formalities, identical directors and officers, and similar factors.

We do not accept Mr. Hacker's analysis. As the trial court observed, "no single factor is determinative, and instead, a Court must examine all the circumstances to determine whether to apply the [alter ego] doctrine." The court cited Mr. Hacker's complete control over Cahuenga, his control of the litigation, his sharing of attorneys with Cahuenga, his transfer of the company to Mr. Schneider (immediately after the judgment), and his destruction of relevant records of assets. Ms. Bogorad received paychecks from Cahuenga until Mr. Hacker transferred the company to Mr. Schneider, following which she continued to work for Mr. Hacker under the auspices of another company. It is

11

reasonable to infer from Mr. Hacker's manipulation of the company and destruction of its records that " 'the separate personalities of the corporation and the shareholder do not in reality exist.' " (*Troyk, supra,* 171 Cal.App.4th at p. 1341.)

Mr. Hacker cites cases stating that "even if the unity of interest and ownership element is shown, alter ego will not be applied absent evidence that an injustice would result from the recognition of separate corporate identities, and '[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy this standard.' " (*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99 Cal.App.4th 228, 245, quoting *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539 (*Sonora Diamond*).) Mr. Hacker apparently construes the phrase quoted from *Sonora Diamond* to mean that, in this case, all Ms. Fabe has shown is "inability to collect on the judgment" and so "she has failed to carry her burden." That is not the case.

In *Sonora Diamond,* there "was no evidence of any wrongdoing" by either corporation involved. (*Sonora Diamond, supra,* 83 Cal.App.4th at p. 539.) The court stated the alter ego doctrine "does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." (*Ibid.*) In short, in *Sonora Diamond* there was no "conduct amounting to bad faith," but there is such conduct here. (See also *J.H. Rose Logistics, LLC v. Bonerts Inc.* (Nov. 20, 2017, No. 2:17-cv-03556-CAS(GJSx)) 2017 U.S.Dist. Lexis 192971, pp. *14–*15 [stating that while there was no evidence of bad faith in *Sonora Diamond*, in *J.H. Rose* the plaintiff was "not just an unsatisfied creditor; the [complaint] includes specific allegations of bad faith"].) As the

Commissioner contends, "[a]llowing Mr. Hacker to hide behind the corporate shell of [Cahuenga]" would be an inequitable result.

Then Mr. Hacker asserts, with no citation to the record, that during the trial court proceedings, he "provided detailed information that [Cahuenga] had assets totaling over $400,000.00, more than enough to satisfy the judgment," and Ms. Fabe "failed to take any action against [Cahuenga] assets which could have satisfied the Judgement [*sic*] in full." We assume these assertions refer to Mr. Hacker's motion for reconsideration, which the trial court properly rejected.

"The essence of the alter ego doctrine is that justice be done." (*Mesler, supra,* 39 Cal.3d at p. 301.) Mr. Hacker has shown no abuse of discretion in the trial court's alter ego ruling.

## 2. The Claim of Failure to Renew the Judgment

Mr. Hacker next argues that the judgment was not renewed within the 10-year renewal period, and so had expired and cannot be enforced. He is mistaken.

A judgment is enforceable "upon entry" (Code Civ. Proc., § 683.010), and "upon the expiration of 10 years after the date of entry of a money judgment," the judgment "may not be enforced" (§ 683.020, subd. (a)). The Commissioner filed an alter ego motion to amend the judgment on January 9, 2020. The judgment to be amended is the revised amended judgment entered on September 14, 2012. The 10-year renewal period had not expired.

Mr. Hacker contends the 10 years run from the date of the original judgment (December 11, 2009). It does not. The court in *Iliff v. Dustrud* (2003) 107 Cal.App.4th 1201 expressly held otherwise, stating: "These provisions need no judicial construction. The statutory language is unambiguous and we

13

abide by its plain and straightforward terms. . . . [A] party in whose favor a judgment has been rendered is entitled to execution immediately upon entry. . . . By the statute's plain terms this rule applies to any money judgment . . . *regardless of whether it be a modified or amended judgment*, and without regard to finality. Upon entry by the clerk, any such judgment is enforceable for a 10-year period." (*Id.* at p. 1207, citations omitted, italics added; *id.* at p. 1206 [finding the 10-year period began "upon entry of the amended judgment . . . , not from entry of the original judgment"]; see also *In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 502 ["When an amended judgment is entered, the 10-year period within which the judgment must be enforced or renewed commences upon the date of entry of the amended or modified judgment."].)

Mr. Hacker contends *Iliff v. Dustrud* was incorrectly decided. We find no basis, in Mr. Hacker's arguments or otherwise, to disagree with the court's analysis.

### 3. The Claim of Laches

#### a. The law

"If, in light of the lapse of time and other relevant circumstances, a court concludes that a party's failure to assert a right has caused prejudice to an adverse party, the court may apply the equitable defense of laches to bar further assertion of the right." (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 183.)

"The standard of review for an order applying the doctrine of laches is generally substantial evidence. [Citation.] But because laches is an affirmative defense, . . . the standard of review for an order refusing to apply laches is different. ' "In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden

14

and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment . . . ." ' [Citation.] Instead, ' "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law" ' because ' "the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Lent v. California Coastal Com.* (2021) 62 Cal.App.5th 812, 837 (*Lent*).)

"For purposes of laches, ' " ' "[a] defendant has been prejudiced by a delay when the . . . defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." ' " ' " (*Lent, supra,* 62 Cal.App.5th at p. 838.)

### b. This case

Mr. Hacker contended in the trial court that the motion to amend the judgment was barred by the doctrine of laches. The trial court implicitly concluded Mr. Hacker did not carry his burden of proof on that point when it granted the Commissioner's motion. The evidence does not compel a finding in Mr. Hacker's favor as a matter of law. (*Lent, supra,* 62 Cal.App.5th at p. 837.)

Mr. Hacker asserts Ms. Fabe "provided no evidence to support her excuse for the 7-year delay in taking the post-judgment depositions," and there was "no evidence submitted that the delay was caused by Hacker in any way." But the burden of proof was Mr. Hacker's. Moreover, Mr. Hacker has apparently forgotten that in 2015, in *1538 Cahuenga II*, we affirmed the denial of his motion for a protective order preventing his deposition, quoting the trial court's observation that " '[t]his case just has a history of hardball resistance to reasonable

15

requests to enforce the judgment. . . .  [W]hat I see is parties . . . saying we are not going to comply.  We don't care what you say.  Forget it.' " (*1538 Cahuenga II, supra,* 2015 Cal.App.Unpub. Lexis 6259, pp. *9–*10.)

Then Mr. Hacker challenges the delay between the 2016 debtor examinations and the January 2020 motion to amend the judgment.  He claims, without citation to the record, that he "suffered harm" from the erroneous abstract of judgment Ms. Fabe filed in 2010.  (In 2012, we affirmed the trial court's order quashing that abstract.)  Mr. Hacker further claims unspecified harm "in terms of [his] ability to present evidence to rebut [the judgment creditors'] alter ego claims."  Again, he cites no evidence.  These unsupported assertions, of course, do not establish either unreasonable delay or prejudice.

4.     **The Res Judicata Claim**

"The doctrine of res judicata precludes parties or their privies from relitigating an issue that has been finally determined by a court of competent jurisdiction." (*Levy v. Cohen* (1977) 19 Cal.3d 165, 171.)  Mr. Hacker contends the doctrine applies to bar the Commissioner's alter ego motion, because the trial court denied Ms. Fabe's 2010 alter ego motion for lack of evidence, and that ruling was "clearly 'final.' "  We disagree.

Citing no legal authority, Mr. Hacker dismisses the fact the trial court repeatedly stated its 2010 alter ego ruling was "without prejudice."  Indeed, the court observed, "If you guys go back to the drawing board, I'll consider this again."  We cannot construe that ruling as a final ruling on the merits.  (See *Williams v. City of Oakland* (1973) 30 Cal.App.3d 64, 69 ["It has repeatedly been held that:  'The term "*without prejudice*," in its

general adaptation, means that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another application as if no suit had ever been brought.' [Citations.] It has been said that the 'purpose and effect of the words "without prejudice" in a decree dismissing a bill is to prevent the defendants from availing themselves of the defense of *res adjudicata* in any subsequent proceeding by the same plaintiffs on the same subject matter.' "].)

## DISPOSITION

The second revised amended judgment is affirmed. The Labor Commissioner and Ms. Fabe are entitled to costs on appeal.


GRIMES, J.


WE CONCUR:




STRATTON, P. J.




WILEY, J.


17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RON HACKER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JACQUELINE M. FABE,<br><br>    Defendant and Respondent. | B309997<br><br>Los Angeles County<br>Super. Ct. No. BC341913 |
| CALIFORNIA STATE LABOR COMMISSIONER, DIVISION OF LABOR STANDARDS ENFORCEMENT, DEPARTMENT OF INDUSTRIAL RELATIONS,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>1538 CAHUENGA PARTNERS, LLC,<br><br>    Defendant. | Los Angeles County<br>Super. Ct. No. SC099658<br><br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION**<br><br>**[No change in judgment]** |

THE COURT:

The opinion in the above-entitled matter filed on June 12, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

| | | |
|---|---|---|
| STRATTON, P. J. | GRIMES, J. | WILEY, J. |